

Dated: March 30th, 2021

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## IN BLUEFIELD

| IN RE: | CASE NO. 1:18-bk-10063 |
|---|---|
| BLUEFIELD WOMEN'S CENTER, P.C., | CHAPTER 11 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |

## **MEMORANDUM OPINION AND ORDER**

Pending is the Motion to Dismiss filed by the United States Trustee (the "MTD") on August 19, 2019 [dckt. 113]. On August 21, 2019, Robert J. Stientjes, Anthony S. Gasaway, Gasaway & Stientjes, LLC, and John M. Gibson, as Administrator of the Estate of Michael F. Gibson, (collectively "Attorney Creditors") joined in the United States Trustee's ("UST") MTD [dckt. 115]. On September 3, 2020, a hearing was held on this matter (the "Hearing"). At the Hearing, the UST, Attorney Creditors, and Bluefield Women's Center, P.C. ("Bluefield") all agreed that dismissal of this case was appropriate, but notified the Court that the terms of dismissal were in conflict. The Court determined that it needed further briefing to adjudicate this matter and directed the parties to file a brief with respect to the distribution of the assets.

All briefing having been received, this matter is ready for adjudication.

# I.

### A.    Procedural and Factual Background

Bluefield is a health care provider located in Bluefield, West Virginia with a specialized practice in Obstetrics and Gynecology. Bluefield employs only one physician, Randy Brodnik ("Brodnick"), who is also Bluefield's sole shareholder.

Following an extensive investigation by the Internal Revenue Service ("IRS") into Brodnik's concealment of income and tax evasion, on March 18, 2009, the Department of Justice filed an indictment in the Southern District of West Virginia against Brodnick charging him with one felony count of conspiracy and six felony counts of tax evasion. Brodnick retained Attorney Creditors in 2004 for legal representation throughout the pre-indictment investigation and criminal trial. Attorney Creditors contend that they worked hundreds of hours in the pre-indictment investigation and legal proceedings, thereby generating a substantial amount in attorney fees and expenses (more than $650,000). At trial, Brodnick was acquitted, and thereafter refused to pay Attorney Creditors, alleging that they had committed legal malpractice.

After a disagreement relating to funds being held in Attorney Creditors' trust account, Brodnik and Bluefield filed suit against Attorney Creditors in the Circuit Court of Mercer County. They asked the court to order Attorney Creditors to release the disputed funds to them. Attorney Creditors filed a counterclaim against Brodnik and Bluefield for breach of contract and restitution, attempting to recover unpaid legal fees in connection with Brodnik's criminal proceedings. Thereafter, Brodnik and Bluefield filed counterclaims against Attorney Creditors alleging legal malpractice. Attorney Creditors moved for Summary Judgment on the legal malpractice claims,

and on September 13, 2017, the Circuit Court entered a Final Order Granting Partial Summary Judgment in favor of Attorney Creditors, thereby denying Brodnick's claim of legal malpractice.

During discovery regarding the remaining claims, Attorney Creditors served Bluefield and Brodnick with several sets of written discovery requests, but Bluefield and Brodnick repeatedly ignored the discovery deadlines. Attorney Creditors filed a motion to compel, which was granted at a later hearing. In response to Bluefield and Brodnick's failure to comply with the court's order to provide complete responses to the outstanding discovery requests, Attorney Creditors filed a motion for sanctions. On October 30, 2017, an evidentiary hearing on the motion for sanctions was held, and on November 17, 2017, the Circuit Court of Mercer County entered an order finding that Brodnick's conduct in failing to answer the outstanding discovery requests was "willful, intentional[,] and in bad faith." In accordance with Rule 37 of the West Virginia Rules of Civil Procedure, the Circuit Court of Mercer County issued sanctions against Brodnick, resulting in default judgment to Attorney Creditors for the legal fees and expenses owed by Bluefield and Brodnick in the aggregate amount of $927,049.45 plus pre-judgment interest (collectively, the "Judgment").

On December 14, 2017, Bluefield and Brodnik filed a Notice of Appeal to the West Virginia Supreme Court of Appeals concerning the above Final Order Granting Partial Summary Judgment entered on September 13, 2017 and the order granting Motion for Sanctions entered on November 17, 2017. As a result of Bluefield's failure to post a bond, which was required to stay any efforts to collect the Judgment while the appeal was underway, Attorney Creditors initiated efforts to collect the Judgment through the Circuit Court of Mercer County, which issued suggestions to both Bluefield and various financial institutions. In response to dubious cash movements in and out of Bluefield's bank accounts, in what was alleged to be an effort to evade

collection of the Judgment, and compounded with Bluefield's violation of the suggestions of payments issued by the Circuit Court, Attorney Creditors moved for the appointment of a receiver. The Circuit Court acquiesced and appointed a state court receiver.

On May 31, 2018, one day after the appointment of a receiver, Bluefield filed bankruptcy under Chapter 11, thereby staying any attempt by Attorney Creditors to collect the Judgment while the appeal was underway in the West Virginia Supreme Court of Appeals. Notably, Attorney Creditors are the *only* creditors in the case, other than administrative expenses that may accrue. Attorney Creditors filed a Motion to Direct Debtor to Bring Assets Back into the Bankruptcy Estate [dckt. 85], alleging that Bluefield had improperly distributed $200,000 from the Estate to Brodnik in violation of a Court Order. In the Omnibus Agreed Order (the "Omnibus Order") entered on March 3, 2019 [dckt. 106], Bluefield admitted to improper distribution and agreed to refund $200,000 to the Estate in installments and agreed to establish and use DIP bank accounts instead of impermissibly using its previous pre-filing accounts. Furthermore, the Court also granted relief from the automatic stay so that the parties could continue litigating the state court appeal.

Just months after entry of the Omnibus Order, the UST filed the MTD, and the Attorney Creditors joined in. It was based on Bluefield's failure to abide by the Omnibus Order; specifically, Bluefield failed to make the repayment installments contemplated in the order. The MTD was eventually heard by the Court on October 10, 2019. At that time, the parties reported that they had been in discussions and had come up with a proposed agreed order to resolve the MTD. The Court entered the proposed agreed order submitted by the parties [dckt. 131], which stated that Bluefield would continue making payments under the Omnibus Order, and that a status conference would be held on December 12, 2019. The status conference, after being continued, occurred on February 19, 2020. At that time, the UST reported no general change in the case;

Bluefield was repaying monies under the Omnibus Order, but remained delinquent in payments and the parties were still awaiting a decision from the West Virginia Supreme Court of Appeals on the state matters. The status conference was continued several times and the UST and Attorney Creditors continued to report that Bluefield was still attempting to repay the monies under the Omnibus Order, but the payments continued to be delinquent, that monthly operating reports were not being filed timely, DIP Accounts were not being utilized, and they were all still waiting on a decision in the state court appeal.

Finally, on July 30, 2020, the West Virginia Supreme Court of Appeals entered an order: (1) affirming the Circuit Court's award of summary judgment to Attorney Creditors, thereby denying the claims of malpractice against them; and (2) affirming the Circuit Court of Mercer County's award of the Judgment.

Soon thereafter, on August 4, 2020, Attorney Creditors and the UST filed Supplements to the UST's MTD [dckts. 202 & 206]. In a hearing held on August 13, 2020, the UST informed the Court that it intended to press forward with the MTD. The Court set the matter for an evidentiary hearing on September 3, 2020. At that hearing, the parties all agreed that dismissal of the case was appropriate, but they disagreed heartily on the terms of dismissal. The Court ordered post-hearing briefs.

Attorney Creditors argue that dismissal should contain certain terms. They anticipate that the state court matters will return to the Mercer County Circuit Court for further adjudication following dismissal of this case. Based on Bluefield's conduct in the instant case and in the state matters, Attorney Creditors request that the following requirements be added to the dismissal order: (1) Bluefield must transfer all funds in the First and Second DIP accounts (approximately $320,466) to the Registry of the Mercer County Circuit Court for distribution as contemplated in

the state court proceedings; (2) Bluefield must transfer all funds in the unauthorized accounts to the Registry of the Mercer County Circuit Court for distribution as contemplated in the state court proceedings; (3) Bluefield must not withdraw any funds from any of the described bank accounts; (4) Bluefield must return all assets to the Estate contemplated in the Omnibus Order; (5) the Court shall dismiss the case contingent on the above-listed transfers; and (6) if the Court is unwilling to make the transfers, it shall immediately freeze the DIP accounts and the unauthorized accounts and convert the case to one under Chapter 7.  Attorney Creditors argue that under *Czyzewski v. Jevic Holding Corp.,* 137 S.Ct. 973 (2017), no monies should be distributed to Bluefield following dismissal because the Omnibus Order did not contemplate that eventuality, and the Omnibus Order can be followed in this dismissal because it provides for distribution consistent with the priority rules of the Code and does not violate *Jevic*.  Furthermore, Attorney Creditors posit that independent cause exists for distribution under their scheme in 11 U.S.C. § 349(b) because distribution of the assets to Bluefield would cause it unjust enrichment which would cause the parties to not return to the pre-petition *status quo* contemplated in *Jevic*.

The UST states, first, that it considers conversion to Chapter 7 inappropriate because: (1) this is essentially a two-party proceeding and there is no need for a Trustee to balance interests; (2) state collection efforts could easily resume outside of bankruptcy; (3) as Bluefield's business is a specialized medical practice, it would be impossible to appoint a Trustee to continue operations without Brodnik's cooperation (which would not be forthcoming); and (4) closure and liquidation of the business would cause a reduction in vital medical services needed by an already-underserved region of West Virginia.  It is the UST's request that dismissal be effectuated without additional terms, or, with only the terms articulated in the Omnibus Order (specifically, in paragraphs G and K).

For context, the provisions of the Omnibus Order that are contemplated by Attorney Creditors and the UST are as follows:

> G. . . . all amounts deposited in the First DIP Account shall accrue for the sole benefit of the creditors of the Bankruptcy Estate. In the event this Bankruptcy case is dismissed, for any reason, before the Judgment becomes final and non-appealable, the entire balance in the First DIP Account shall be transferred to the registry of the Circuit Court of Mercer County . . . In the event such money cannot be deposited into the registry . . . the parties agree to file a joint motion to interplead the funds in the Circuit Court. . . .
>
> . . .
>
> K. Debtor shall create a second debtor-in-possession account . . . Unless and until the Judgment is reversed by final and non-appealable Order of either the Circuit Court of Mercer County or any court of appeals . . . all profits in the Second DIP Account shall accrue for the sole benefit of the creditors of the Bankruptcy Estate. In the event this Bankruptcy case is dismissed, for any reason, before the Judgment becomes final and non-appealable, the entire balance in the First DIP Account shall be frozen immediately and transferred to the registry of the Circuit Court of Mercer County . . . In the event such money cannot be deposited into the registry . . . the parties agree to file a joint motion to interplead the funds in the Circuit Court. . . .

Bluefield asserts that, under *Czyzewski v. Jevic Holding Corp.,* 137 S.CT. 973 (2017), dismissal must be made without Attorney Creditors' terms because, outside of a confirmed plan, the Court may not order disbursal of Estate funds without consent of the parties. Under 11 U.S.C. §§ 349(b) and 112(b), Bluefield argues that dismissal typical revests property of the Estate into the entity in which it was vested prior to filing.

## II.

A. **Legal Standards**

Since the question of dismissal, in and of itself, is not in controversy (as all parties agree that dismissal is appropriate), the Court need not discuss the legal basis for dismissal. The Court will move directly to the effect of dismissal and the application of *Jevic*.

Section 349 governs the effect of dismissal in bankruptcy cases. Section 349(b)(3) provides as follows:

> (b) Unless the court, *for cause*, orders otherwise, a dismissal of a case other than under section 742 of this title –
> . . .
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b)(3) (emphasis added). This section applies to "all debtors and their property under any chapter of the Bankruptcy Code" and deals with property that is "not otherwise dealt with or administered during the case." *In re Nelums*, 617 B.R. 70, 74 (Bankr. D.S.C. 2020) (quoting *In re Kerr*, 570 B.R. 74, 76 (Bankr. N.D. Ind. 2017)); *In re Virginia Broadband, LLC*, 498 B.R. 90, 97 (Bankr. W.D. Va. 2013). The purpose of the section is to "undo the bankruptcy case, as far as practicable, and to *restore all property rights to the position in which they were found at the commencement of the case.*" *Virginia Broadband*, 498 B.R. at 97 (quoting H.R.REP. NO. 95–595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6294 (emphasis added)). The Fourth Circuit has stated that "there is nothing at all absurd about returning the funds to the debtor." *Department of Social Services, Division of Child Support Enforcement v. Webb*, 908 F.3d 941, 946-46 (4th Cir. 2018). Notably, "for cause," a bankruptcy court may "alter a Chapter 11 dismissal's ordinary restorative consequences." *Jevic*, 137 S.Ct. at 979. The Supreme Court has stated, though, with reference to "cause" under 349(b), that "this provision appears designed to

give courts the flexibility to 'make appropriate orders to protect rights acquired in reliance on the bankruptcy case" and "nothing else in the Code authorized a court ordering a dismissal to make . . . final distributions that do not help restore the *status quo ante* . . . and that would be flatly impermissible in . . . a Chapter 11 plan because they violate priority without the impaired creditors' consent." *Id.* at 984-85. And, "[t]hat being so, the word 'cause' is too weak a reed upon which to rest so weighty a power." *Id.* at 984.

"The Code also sets forth a basic system of priority, which ordinarily determines the order in which the bankruptcy court will distribute assets of the estate." *Jevic*, 137 S.Ct. at 979. Priorities are governed by 11 U.S.C. § 507. First come domestic support obligations, followed by administrative priorities of the Chapter Trustees, followed by administrative claims (including certain taxes, wages, costs of preserving the Estate), later followed by priority tax claims, and so on. 11 U.S.C. § 507(a). Non-priority, unsecured claims are further down the chain.

Of course, since 2017, any interpretation that this Court takes pursuant to § 349(b) in a Chapter 11 case is guided by the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973 (2017). The Bankruptcy Court for the District of Delaware dismissed a Chapter 11 bankruptcy case, but before doing so, approved a settlement distributing Estate assets in a manner that violated the disbursement order of the Code. *Id.* at 978. The Supreme Court ruled that a bankruptcy court does not have the power to "order [] priority-skipping kind of distribution scheme in connection with a Chapter 11 dismissal" and that "a distribution scheme ordered in connection with the dismissal of a Chapter 11 case cannot, without the consent of affected parties, deviate from the basic priority rules . . . ." *Id.*

**B.     Analysis**

This case will be dismissed pursuant to § 1112(b) based on the UST's assertions that dismissal is the better course (versus conversion), and because the parties have all agreed to dismissal. The question here and now is how that dismissal will be effectuated.

The first question that the Court needs to address, in applying *Jevic* and § 349(b), is whether the contemplated dismissal structure violates the Code's priority scheme. If it does, then *Jevic* may apply to prevent any of the requested terms. If it does not, *Jevic* would thus not apply and dismissal could be conditioned upon specific disbursement terms.

Looking at Bluefield's schedules, it appears that there are no secured creditors, and "Amex" is the only unsecured creditor listed. The creditor matrix lists only the Attorney Creditors. However, the claims register shows six claims (the IRS claim was reduced to zero): the West Virginia State Tax Department ("WVSTD") (a priority claim of $35.44 and an unsecured non-priority claim of $81.82), American Express National Bank (unsecured claim of $1,015.19), McKesson Medical-Surgical, Inc. (unsecured claim of $2,000), and the Attorney Creditors' individual claims. The claim that gives most pause to this Court is the priority claim of the WVSTD. The WVSTD has not opined on the instant matter and has, in fact, filed nothing in the case other than a Proof of Claim and a Notice of Appearance. However, this Court cannot ignore the fact that: (1) administrative claims may have accrued, and (2) there may be a tax priority claim that would implicate *Jevic*. And, no one has objected to the validity of the WVSTD's priority claim. Attorney Creditors, by virtue of holding a state court judgment that has not been recorded, are unsecured creditors. The payment of any unsecured creditor prior to payment of the WVSTD priority claim would violate the Code's priority scheme. Importantly, although several parties agreed to the Omnibus Order, the WVSTD did not. Thus, it cannot be said that all parties have

consented to the structured dismissal contemplated by the Attorney Creditors and by the Omnibus Order.

Furthermore, Attorney Creditors are not the only unsecured creditors in the case. The claims register evidences the existence of at least two other unsecured creditors. The Omnibus Order states that that Bluefield's funds shall accrue for the benefit of creditors. Attorney Creditors are not the only creditors in the case. The funds have also, at the very least, accrued for the WVSTD, American Express and McKesson Medical-Surgical. To transfer the funds to the Mercer County Circuit Court for distribution to the Attorney Creditors would be to ignore the other creditors in the case and prioritize Attorney Creditors over all of them. This would fly in the face of bankruptcy policy, which encourages the orderly distribution of Estate assets in lieu of creditors swarming around assets like sharks around chum. Therefore, the distribution requested by Attorney Creditors is violative of *Jevic* and cannot be approved by this Court.

Attorney Creditors plead, in the alternative, that the "cause" provision of § 349(b) would allow this Court to approve the structured dismissal it seeks. This Court does not agree. Harkening back to the Supreme Court's decision in *Jevic*, "cause" is too slender a reed for this Court to approve disbursement of funds in contravention to the Code's priority scheme.

### III.

**A. Conclusion**

After evaluating Attorney Creditors request to structure Bluefield's dismissal pursuant to either their requests or pursuant to the Omnibus Order, it has become clear to the Court that the relief requested is violative of the Supreme Court's holding in *Jevic*. Thus, the dismissal in this

case must be accomplished without any additional terms or restrictions and Bluefield's property must re-vest pursuant to § 349(b)(3).

Based on the foregoing,

It is **ORDERED** that the UST's Motion to Dismiss be, and hereby is, GRANTED.

It is further **ORDERED** that the dismissal will be accomplished without any additional terms or restrictions.